1  David S. Casey, Jr., SBN 060768
   *dcasey@cglaw.com*
2  Gayle M. Blatt, SBN 122048
   *gmb@cglaw.com*
3  P. Camille Guerra, SBN 326546
   *camille@cglaw.com*
4  **CASEY GERRY SCHENK FRANCAVILLA**
     **BLATT & PENFIELD, LLP**
5  110 Laurel Street
   San Diego, CA  92101
6  Telephone:   (619) 238-1811
   Facsimile:   (619) 544-9232
7
8  *Counsel for Plaintiff and the putative classes*

9              **UNITED STATES DISTRICT COURT**

10         **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

11  TENIJA MOTON, individually, and on          Case No. 5:23-cv-00709
    behalf of all others similarly situated,
12
                                                 **CLASS ACTION COMPLAINT**
13                        Plaintiff,

14          v.                                   **JURY TRIAL DEMANDED**

15  APPLE, INC.,

16
                          Defendant.
17

18
19
20
21
22
23
24
25
26
27
28

1       Plaintiff Tenija Moton, individually and on behalf of all others similarly

2 situated, brings this class action complaint against Apple, Inc. ("Apple" or "Defendant"),

3 and alleges, upon personal knowledge and counsel's investigation, or otherwise upon

4 information and belief, as follows:

5       1.    Apple knows that users want to keep their data private and want to control

6 who has access to it. Thus, Apple promises its mobile device users that they can control

7 the amount of personal data they share with Apple and that they can disable Apple's

8 tracking and recoding of user analytics (browsing history, app usage, geolocation, and

9 other data).

10      2.    Indeed, Apple touts its privacy protections, stating: "At Apple, we respect

11 your ability to know, access, correct, transfer, restrict the processing of, and delete your

12 personal data."

13      3.    Apple also proclaims through its Apple App Store "User Privacy and Data

14 Use" page that:

15            The App Store is designed to be a safe and trusted place for
16            users to discover apps created by talented developers around the
world. Apps on the App Store are held to a high standard for
17            privacy, security and content because nothing is more important
than maintaining users' trust.

18      4.    All of these promises and proclamations by Apple—as well as many others

19 described below—are false.

20      5.    Apple breaches its implicit and explicit privacy promises by tracking and

21 collecting large amounts of personal information from its mobile device users, even when

22 they expressly set the devices to prevent such tracking and data sharing. Apple does this

23 because it also knows user analytics and other data is extremely valuable on the open

24 market and advertisers and other companies will pay handsomely to get it.

25      6.    Apple goads its mobile device and app users into believing they can protect

26 themselves by disabling the sharing of their user data by turning off "Share iPad

27 Analytics" on an iPad, "Share iPhone, and Computer Analytics," or similar settings on

28

other Apple mobile devices like the iPhone, or by turning off "Allow Apps to Request to Track."

7.    Apple promises in its mobile devices' settings that it will "disable [the sharing of] Device Analytics altogether" if a consumer toggles or turns off "Share iPad Analytics" on an iPad, or similar settings on other Apple mobile devices, like the iPhone.

8.    This is untrue. Plaintiff's mobile device and app usage was tracked by Apple even after she had turned off the "Allow Apps to Request to Track" and/or "Share [Device] Analytics" options.

9.    Apple's tracking and hoarding of the user data of Plaintiff and all other Class Members, and collecting and monetizing their information without their consent, is a violation of Apple's promises and a violation of the law, for which Apple is liable.

10.    Plaintiff brings this action individually and on behalf of a class of all citizens nationwide, and all citizens of the State of California (collectively "the class"), whose user data was tracked and collected by Apple without their consent, and seeks all civil remedies provided under the causes of action, including but not limited to compensatory, statutory and/or punitive damages, and attorney's fees and costs.

## I.    <u>JURISDICTION AND VENUE</u>

11.    This Court has subject matter and diversity jurisdiction over this action under 28 U.S.C. §1332(d) because this is a class action wherein the amount of controversy exceeds the sum or value of $5 million, exclusive of interest and costs, there are more than 100 members in the proposed class, and at least one Class Member is a citizen of a state different from Defendant.

12.    The Northern District of California has personal jurisdiction over Apple because Apple's headquarters is located within the District and Apple conducts substantial business in the District through its headquarters, offices, and/or affiliates.

13.    This Court has supplemental jurisdiction over the state law claims, pursuant to 28 U.S.C. §1367.

14.     Venue is proper in this District under 28 U.S.C. §1391(b) because Apple and/or its parents or affiliates are headquartered in this District.

## II.     THE PARTIES

### A.     Plaintiff

15.     Plaintiff Tenija Moton ("Moton" or "Plaintiff") is a resident of Los Angeles, California. She owns an Apple iPhone 11 Pro, that she purchased in approximately 2020, with iOS version 15.6.1 installed.

16.     Plaintiff disabled both "Allow Apps to Request to Track" and "Share iPhone Analytics" on her iPhone 11 Pro.

17.     Nevertheless, Plaintiff later received advertisements reflecting Plaintiff's habits in using Defendant's hardware device and app software, indicating Defendant's access to, tracking of, and sharing with third persons, above-described user data.

### B.     Defendant

18.     Defendant Apple, Inc., is incorporated in California and maintains its principal place of business at One Apple Park Way, Cupertino, CA 95014.

## III.     FACTUAL ALLEGATIONS

### A.     Users of Apple devices and apps reasonably expect privacy.

19.     Apple is the world's largest technology company with a market capitalization of approximately $2.28 trillion.

20.     Apple produces widely known mobile electronic devices, including the iPhone and the iPad, with sales over $378 billion in 2022. Apple's most valuable product is the iPhone, with global market share exceeding 28%, and more than 1.2 billion iPhone users. Apple also produces the iPad, a famously popular tablet computer that claims a 38% global market share for tablets in 2022.

21.     iPhones and iPads are preloaded at sale with Apple's proprietary apps, including the App Store, Apple Music, Apple TV, Books, and Stocks.

22.     Apple is a California corporation. California law prohibits unauthorized recording of confidential communications. California law therefore protects all victims, including Plaintiff and device and app owners, users, and any consumer thereof.

23.     Article I, Section 1 of the California Constitution recognizes a fundamental right of privacy:

> All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy.

24.     The phrase "and privacy" was added in 1972 with legislative intention to curb businesses' control over the unauthorized collection and use of consumers' personal information, exactly the transgression Defendant exacted on unsuspecting users, as above.

25.     The legislative record states:

> The right of privacy is the right to be left alone… It prevents government and business interests from collecting and stockpiling unnecessary information about us and from misusing information gathered for one purpose in order to serve other purposes or to embarrass us. Fundamental to our privacy is the ability to control circulation of personal information. This is essential to social relationships and personal freedom.

26.     A Consumer Reports study indicates 92% of Americans believe internet companies should be required to obtain consent before selling or sharing user data, and tell consumers what information has been collected about them.

27.     Apple's conduct egregiously compromises such expectations of device and app users, who expressly inform Apple they do not want their communications monitored, thereby affording reasonable expectations of privacy, yet Apple nonetheless invades it by monitoring private user data.

28.     Apple's tracking and data collection respecting Plaintiff, and Class Members, has included detailed data collected by Apple, whereby Apple created and monetized user data and enabled interception by third parties without users' consent.

**B.     Apple's privacy representations to mobile device and app users**

29.     Apple knows device and app users expect data privacy, as discussed above.

30. Apple's Chief Executive Officer, Tim Cook, publicly professed in 2015 Apple's commitment to consumer privacy, stating:

> We see that privacy is a fundamental human right that people have. We are going to do everything that we can to help maintain that trust. (Apple CEO Tim Cook: 'Privacy Is A Fundamental Human Right,' NPR (Oct. 1, 2015), https://www.npr.org/sections/alltechconsidered/2015/10/01/445 026470/apple-ceo-tim-cook privacy-is-a-fundamental-human-right.)

31. In 2021, Apple introduced the App Tracking Transparency protocol that sets the privacy practices for iPads and iPhones. These transparency protocols required all app developers to secure users' affirmative consent before tracking their activity through third party apps and websites.

32. Apple acknowledges "privacy is a fundamental human right" and says its privacy principles include "Making sure that users know what data is shared and how it issued," and that they can exercise control over it. (https://www.apple.com/privacy/docs/A_Day_in_the_Life_of_Your_ Data .pdf.)

33. Apple world-wide advertising featured an iPhone image stating, "Privacy. That's iPhone." (Apple and Privacy, Apple Insider, https://appleinsider.com/inside/apple-and-privacy.)

34. In 2022, CEO Cook re-emphasized Apple's ostensible commitment to consumer privacy, stating "Privacy is a fundamental right and we build it into all products and services at Apple. You should be in control of your data - not the highest bidder," with a short video stating, "It's your data. iPhone helps keep it that way" and states "Privacy. That's iPhone."  (Mehak Agarwal, 'You should be in control of your data,' says Apple CEO Tim Cook on privacy, Business Today (May 19, 2022), https://www.businesstoday.in/technology/news/story/you-should-be-in-control-of-your-data-says-apple-ceo-tim-cook-on-privacy-3 34194-2022-05-19.)

35. Apple also took out billboard ads proclaiming Apple's supposed commitment to privacy, saying things like: "What happens on your iPhone, stays on your iPhone," "Your iPhone knows a lot about you. But we don't."

36.     An Apple video advertisement touting its privacy campaign, displays a text on the screen stating, "It's your data. iPhone helps keep it that way." Another Apple advertisement claims "Your information is for sale. You have become the product," after which, upon introducing Apple's privacy options, the narrator adds, "Whatever you choose is up to you… App Tracking Transparency. A simple new feature that puts your data back in your control."

37.     Apple purports to offer its mobile device and app users the option to control what app browsing data Apple and third-party app developers intercept or collect by simply adjusting their device's privacy settings:  "App Tracking Transparency" is offered which ostensibly allows device users "to choose whether an app can track your activity" across other companies' Apps and websites for the purposes of advertising or sharing with data brokers. (If an app asks to track your activity, Apple (May 10, 2022), https://support.apple.com/enus/ HT212025.)

38.     By toggling off "Allow Apps to Request to Track" in users' device settings, Apple misleads customers into believing that apps "can't access the system advertising identifier (IDFA), which is often used to track" and are "not permitted to track your activity using other information that identifies you or your device, like your email address." (*Ibid*.) Indeed, Apple's "Share iPhone Analytics," "Share iPhone & Watch Analytics," and "Share iPad Analytics" ("Share [Device] Analytics") privacy settings make an explicit promise to "disable the sharing of Device Analytics altogether" when switched off. (Device Analytics & Privacy, Apple, https://www.apple.com/legal/ privacy/data/en/device-analytics/.) When a consumer has an Apple Watch connected to an iPhone, it is necessary instead to turn off the setting for "Share iPhone and Watch analytics" in order to avoid and disable tracking or interception of information or usage. The "Share [Device] Analytics" feature is referred to, below, in context of several relevant devices and apps.

39.     Apple's express representations are intended to create the reasonable impression among device and app users that Apple will cease collecting, recording, or

allowing third parties to intercept any of users' app information, usage, or activity once the setting "Allow Apps to Request to Track" and/or "Share [Device] Analytics" settings are turned off.

40.     Apple nonetheless knows, and has known, that these claims are false and misleading.

41.     Any reasonable device or app user, after viewing Apple's privacy settings, would reasonably believe that by turning off "Share [Device] Analytics" and/or "Allow Apps to Request to Track," Apple does not and would not track mobile user data. But Apple still does.

**C.      Apple's device and app user data is surreptitiously tracked, recorded, and exploited.**

42.     Apple has, at all relevant times, represented to mobile device users they can prevent Apple from tracking their app viewing history and activity data by turning off "Allow Apps to Request to Track" and/or "Share [Device] Analytics" from their Apple device's privacy controls, including in the location where users customarily enable or disable these settings.

43.     Unknown to Plaintiff and Class Members at all times material to their usage, Apple records, tracks, collects, and monetizes analytics data, including browsing history and activity information, regardless of what safeguards or "privacy settings" consumers undertake to protect their privacy. Apple continues to record customers' app usage, app browsing communications, and personal information in its proprietary Apple apps, including the App Store, Apple Music, Apple TV, Books, and Stocks even when users follow Apple's own instructions and turn off "Allow Apps to Request to Track" and/or "Share [Device] Analytics" on their privacy controls.

44.     The user information Apple tracks includes: (a) how a user initially found an app; (b) the duration a user looked at an app in the app store; (c) the user's searches in the app store; (d) the advertisements displayed to each user; and (e) which apps the users clicked on.

45.     Apple facilitates the transmission to, or interception by third parties, of users' information and use history, which third parties then exploit for financial gain.

46.     Apple never disclosed it would continue tracking and recording user data even if above steps were performed, or that it could and would collect, aggregate, and analyze user data even after device and app users followed Apple's instructions on how to prevent such data access, tracking, or sharing with third parties.

47.     Apple's covert tracking, assembly, and sharing of device and app user data was and remains in direct contradiction of Apple's privacy promises.

48.     Apple knowingly and willfully spied on device and app users without consent.

49.     Plaintiff alleges on information and belief that app developers and security researchers at Mysk software company recently determined that device and app users' privacy settings did not stop Apple's data collection activity when using several Apple apps including the App Store, Apple Music, Apple TV, Books, and Stocks. Apple's tracking continued unabated, even though device and app settings were set to ensure privacy.

50.     By way of example, the App Store absorbs information about users' real time electronic activity via the app, collects details about users' mobile device(s) also, including ID numbers, device used, screen resolution, keyboard language, and medium of internet access. The Mysk Study revealed Apple's Stocks App collected device and app users' list of watched stocks, times of activity, and news articles accessed over the app.

51.     The Mysk Study also discovered Apple collects broad user data from devices interacting with Apple apps. By way of example, Apple collects a "Directory Services Identifier" tied to mobile device users' iCloud accounts, linking names, e-mail addresses, and other personal identifying information with harvested app and device user data. (Mitchel Clark, iOS developers say Apple's App Store analytics aren't anonymous, The Verge (Nov. 21, 2022), https://www.theverge.com/ 2022/11/21/23471827/apple-app-store-datacollection-analytics-personal-info-privacy.)

52.    Apple uses apps to perform espionage over computer-to-computer communications: Between users' devices, and Defendant's computer servers and hardware operating apps. Apple tracks and collects various user data, which is thereby associated with mobile app and device users in direct contravention of Apple privacy terms.

53.    Apps are devices. They are also device components (and therefore devices) insofar as app software alters physical operation of devices by instructing physical hardware components to run processes to access, retain, and share communications with Apple without users' consent.

54.    User data Apple obtained without consumers' permission is "content" generated through Plaintiff's and Class Members' use, interaction, and communication with Apple's apps. Said differently, content is Plaintiff's and Class Members' communications with Defendant's apps. Such information is not only record information regarding characteristics of messages generated in the course of communications. That Defendant values, tracks, collects, and transmits this content, confirms (and works an admission by Defendant) such communication is "content" of substance, meaning, and economic value to Apple.

**D.    Apple device and app user data is a valuable commodity or currency.**

55.    "Content" of communications between mobile device and app users, to the apps and devices themselves, and subsequently Defendant's hardware, is valuable, sellable data.

56.    E-commerce experts understand this value. Personal information is "currency," which corporate America including Defendant intends to collect and spend. (Paul M. Schwartz, Property, Privacy and Personal Data, 117 Harv. L. Rev. 2055, 2056-57 (2004).)

57.    Such "currency" includes Website User and usage data including personal data (i.e., gender, web browser cookies, IP addresses, and device IDs), engagement data and information (i.e., how consumers interact with a business's website, applications, and

emails), behavioral data (i.e., customers' purchase histories and product usage information), and attitudinal data (i.e., data on consumer satisfaction). This constitutes highly valuable information about consumers that companies use to improve customer experiences, refine marketing strategies, capture data to sell it, and perpetuate collection of additional, sensitive consumer data.

58. Utility of consumer data allows optimization of marketing and sales to increase revenue. Advertising commands billions of dollars, increasing stakes of targeted marketing.

59. Apple's ads contribute billions to its bottom line. (Apple, Inc. (n.d.). Apple, Inc. Form 10-K for the Fiscal Year Ended September 24, 2022.)

60. Apple invests heavily in software and hardware facilitating collection of such data, without app and device users' consent or even awareness.

## IV.    TOLLING

61. Any applicable statute of limitations has been tolled by the "delayed discovery" rule and by Apple's fraudulent concealment of its secret data collection practices. Plaintiff did not know (and had no way of knowing) that her user data and personal information therein was being tracked, intercepted, disclosed, or exploited by Apple or via Apple by third parties because Apple kept this information secret despite the fact that Plaintiff and Class Members had turned off their tracking setting in order to secure their privacy. Apple's failure to abide by its promise and agreement not to track Plaintiff and Class Members was hidden and not made known prior to November 20, 2022 when the Mysk Report revealed it publicly.

## V.    CLASS ALLEGATIONS

62. Plaintiff brings this class action on behalf of herself and others similarly situated pursuant to Rule 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure, as defined below. The Nationwide Class that Plaintiff seeks to represent ("Nationwide Class") is defined as follows:

1
2
3

> All individuals who, while using an Apple mobile device, had their information tracked or intercepted by Apple after turning off or declining "Allow Apps To Request to Track," "Share iPhone Analytics," "Share iPad Analytics," and/or any other similar setting on an Apple mobile device.

4    63.    The California Class which Plaintiff seeks to represent (California sub-class)

5   is defined as follows:

6
7
8

> All residents of California who, while using an Apple mobile device had their information tracked or intercepted by Apple after turning off or declining "Allow Apps to Request to Track," "Share iPhone Analytics," "Share iPad Analytics," and/or any other similar setting on an Apple mobile device.

9    64.    The Nationwide Class and California Class are collectively referred to herein

10   as the "class."

11    65.    Excluded from the class are the following individuals and/or entities:

12   Defendant and Defendant's parents, subsidiaries, affiliates, officers and directors, and any

13   entity in which Defendant has a controlling interest; all individuals who make a timely

14   election to be excluded from this proceeding using the correct protocol for opting out; any

15   and all federal, state or local governments, including but not limited to their departments,

16   agencies, divisions, bureaus, boards, sections, groups, counsels and/or subdivisions; and

17   all judges assigned to hear any aspect of this litigation, as well as their immediate family

18   members.

19    66.    Plaintiff reserves the right to modify or amend the definition of the proposed

20   class before the Court determines whether certification is appropriate.

21    67.    Class members are so numerous that joinder of all members is impracticable.

22   Upon information and belief, there are many tens of thousands and more individuals

23   whose user data may have been improperly accessed as alleged above, and each class is

24   apparently identifiable within Defendant's records.

25    68.    Questions of law and fact common to the class exist and predominate over

26   any questions affecting only individual Class Members. These include:

27    a.    Whether Apple represented to Plaintiff and the class that they could

28        control the privacy of their data when using Apple's mobile devices;

11

b.  Whether Apple represented to Plaintiff and the class that they could disable the tracking, collection, and sale or use of their personal data and user analytics on Apple's mobile devices;

c.  Whether those representations were true;

d.  Whether Plaintiff and the class reasonably relied on those representations in turning off or declining "Allow Apps To Request to Track," "Share iPhone Analytics," "Share iPad Analytics," and/or any other similar setting on an Apple mobile device.

e.  Whether Apple continued to track, collect, or otherwise use the personal data of Plaintiff and the class after they turned off or declined "Allow Apps To Request to Track," "Share iPhone Analytics," "Share iPad Analytics," and/or any other similar setting on an Apple mobile device.

f.  The degree to which Apple continued to track, collect, or otherwise use the personal data of Plaintiff and the class after they turned off or declined "Allow Apps To Request to Track," "Share iPhone Analytics," "Share iPad Analytics," and/or any other similar setting on an Apple mobile device.

g.  Whether Apple had a duty disclose that it continued to track, collect, or otherwise use the personal data of Plaintiff and the class after they turned off or declined "Allow Apps To Request to Track," "Share iPhone Analytics," "Share iPad Analytics," and/or any other similar setting on an Apple mobile device.

h.   Whether Apple breached that duty;

i.  Whether Apple's conduct as described herein violated the law, including state and federal wiretap laws and unfair trade practices laws;

j.  Whether California law should apply to the claims of all class members; and

12

1

2

      k.  Whether Apple's conduct as described herein caused harm or damage to Plaintiff and the class members.

3      69.    Plaintiff's claims are typical of those of other Class Members because all had

4 their user data compromised by Apple and/or unauthorized third parties despite electing

5 not to activate features that permitted tracking or sharing and instead, rejecting, disabling,

6 and/or declining such tracking or sharing.

7      70.    This class action is also appropriate for certification because Defendant has

8 acted or refused to act on grounds generally applicable to the class, thereby requiring the

9 Court's imposition of uniform relief to ensure compatible standards of conduct toward the

10 Class Members and making final injunctive relief appropriate with respect to the class as a

11 whole. Defendant's policies challenged herein apply to and affect Class Members

12 uniformly and Plaintiff's challenge of these policies hinges on Defendant's conduct with

13 respect to the class as a whole, not on facts or law applicable only to Plaintiff.

14      71.    Plaintiff will fairly and adequately represent and protect the interests of the

15 Class Members in that Plaintiff has no disabling conflicts of interest that would be

16 antagonistic to those of the other members of the class. Plaintiff seeks no relief that is

17 antagonistic or adverse to the members of the class and the infringement of the rights and

18 the damages Plaintiff has suffered are typical of other Class Members. Plaintiff has also

19 retained counsel experienced in complex class action litigation, and Plaintiff intends to

20 prosecute this action vigorously.

21      72.    Class action treatment is superior to all other available methods for the fair

22 and efficient adjudication of the controversy alleged herein. It will permit a large number

23 of Class Members to prosecute their common claims in a single forum simultaneously,

24 efficiently, and without the unnecessary duplication of evidence, effort, and expense that

25 hundreds of individual actions would require. Class action treatment will permit the

26 adjudication of relatively modest claims by certain Class Members, who could not

27 individually afford to litigate a complex claim against large corporations, like Defendant.

28

CASE NO. 5:23-cv-00709
CLASS ACTION COMPLAINT

1 | Further, even for those Class Members who could afford to litigate such a claim, it would
2 | still be economically impractical and impose a burden on the courts.

3 | 73.    The nature of this action and the nature of laws available to Plaintiff and
4 | Class Members make use of the class action device a particularly efficient and appropriate
5 | procedure to afford relief to Plaintiff and Class Members for the wrongs alleged because
6 | Defendant would necessarily gain an unconscionable advantage since they would be able
7 | to exploit and overwhelm the limited resources of each individual Class Member with
8 | superior financial and legal resources; the costs of individual suits could unreasonably
9 | consume the amounts that would be recovered; proof of a common course of conduct to
10 | which Plaintiff was exposed is representative of that experienced by the class and will
11 | establish the right of each Class Member to recover on the cause of action alleged; and
12 | individual actions would create a risk of inconsistent results and would be unnecessary
13 | and duplicative of this litigation.

14 | 74.    The litigation of the claims brought herein is manageable. Defendant's
15 | uniform conduct, the consistent provisions of the relevant laws, and the ascertainable
16 | identities of Class Members demonstrates that there would be no significant
17 | manageability problems with prosecuting this lawsuit as a class action.

18 | 75.    Adequate notice can be given to Class Members directly using information
19 | maintained in Defendant's records.

20 | 76.    Likewise, particular issues under Rule 23(c)(4) are appropriate for
21 | certification because such claims present only particular, common issues, the resolution of
22 | which would advance the disposition of this matter and the parties' interests therein. Such
23 | particular issues include, but are not limited to:

24 | a.    Whether Apple represented to Plaintiff and the class that they could control
25 | the privacy of their data when using Apple's mobile devices;

26 | b.    Whether Apple represented to Plaintiff and the class that they could disable
27 | the tracking, collection, and sale or use of their personal data and user
28 | analytics on Apple's mobile devices;

14

c.   Whether those representations were true;

d.   Whether Plaintiff and the class reasonably relied on those representations in turning off or declining "Allow Apps To Request to Track," "Share iPhone Analytics," "Share iPad Analytics," and/or any other similar setting on an Apple mobile device.

e.   Whether Apple continued to track, collect, or otherwise use the personal data of Plaintiff and the class after they turned off or declined "Allow Apps To Request to Track," "Share iPhone Analytics," "Share iPad Analytics," and/or any other similar setting on an Apple mobile device.

f.   The degree to which Apple continued to track, collect, or otherwise use the personal data of Plaintiff and the class after they turned off or declined "Allow Apps To Request to Track," "Share iPhone Analytics," "Share iPad Analytics," and/or any other similar setting on an Apple mobile device.

g.   Whether Apple had a duty disclose that it continued to track, collect, or otherwise use the personal data of Plaintiff and the class after they turned off or declined "Allow Apps To Request to Track," "Share iPhone Analytics," "Share iPad Analytics," and/or any other similar setting on an Apple mobile device.

h.    Whether Apple breached that duty;

i.   Whether Apple's conduct as described herein violated the law, including state and federal wiretap laws and unfair trade practices laws;

j.   Whether California law should apply to the claims of all class members; and

k.   Whether Apple's conduct as described herein caused harm or damage to Plaintiff and the class members.

## VI.   CAUSES OF ACTION

77.   Plaintiff brings each of the following claims for relief pursuant to California law because California has a substantial relationship to defendant Apple because Apple has its principal place of business in California, upon information and belief Apple

15

designed and developed the software to track analytical data on iPhones from its
California headquarters and the challenged conduct thus emanated from California.
Accordingly, a significant portion of the events and decision making relating to the
decision to continue to track analytics even after consumers switched it off likely occurred
at Apple's business headquarters in California. Should the Court not apply California law
to Plaintiff's claims, Plaintiff alleges, in the alternative, that the common law claims
should be governed by the Plaintiff's respective states of residence.

## COUNT I

### Invasion of Privacy

### (On Behalf of Plaintiff, the Nationwide Class, and the California Class)

78.     Plaintiff incorporates by reference and re-alleges each and every allegation
set forth above as though fully set forth at length herein.

79.     Plaintiff brings this claim against Defendant individually and on behalf of
members of the class.

80.     The right to privacy in California's constitution creates a universal right of
action against entities such as Apple.

81.     The principal purpose of this constitutional right was to protect against
invasive information gathering, use, and sharing by public and private entities, including
Apple.

82.     To plead a California constitutional privacy claim, a plaintiff must show an
invasion of (1) a legally protected privacy interest; (2) where the plaintiff had a reasonable
expectation of privacy in the circumstances; and (3) conduct by the defendant constituting
a serious invasion of privacy.

83.     As described herein, Apple has intruded upon the following legally protected
privacy interests:

     a. The California Wiretap Act as alleged herein;

     b. A Fourth Amendment right to the privacy of personal data contained on
        personal computing devices, including web-browsing history, as

16

explained by the United States Supreme Court in the unanimous decision
of *Riley v. California*;

c. The California Constitution's guaranteed right to privacy;

d. Apple's Privacy Policy and policies referenced therein, and other public
promises it made not to track or record Plaintiff's communications or
access their computing devices and apps while "Allow Apps to Request to
Track" and/or "Share Device & Watch Analytics" etc. are turned off or
otherwise not activated.

84.    Plaintiff had a reasonable expectation of privacy under the circumstances in
that Plaintiff could not have reasonably expected that Apple would commit acts in
violation of civil and criminal laws; and Apple affirmatively promised consumers it would
not track or share their communications, or access their computing devices or apps, while
they were using an app while "Allow Apps to Request to Track" and/or "Share [Device]
Analytics" were turned off or not activated.

85.    Apple's actions constituted a serious invasion of privacy in that it:

a. Invaded a zone of privacy protected by the Fourth Amendment, namely
the right to privacy in data contained on personal computing devices,
including user data, app activity and app browsing histories;

b. Violated dozens of state criminal laws on wiretapping and invasion of
privacy, including the California Invasion of Privacy Act;

c. Invaded the privacy rights of many millions of Americans without their
consent; and

d. Executed the unauthorized taking of valuable information from many
millions of Americans through deceit.

86.    Committing criminal acts against many millions of Americans constitutes an
egregious breach of social norms that is highly offensive.

87.    The surreptitious and unauthorized tracking of the internet communications
of millions of Americans, particularly where, as here, they have taken active (and

17

recommended) measures to ensure their privacy, constitutes an egregious breach of social norms that is highly offensive.

88.     Apple's intentional intrusion into Plaintiff's internet communications and their computing devices and apps was highly offensive to a reasonable person in that Apple violated state criminal and civil laws designed to protect individual privacy and against theft.

89.     The taking of personally identifiable information from millions of Americans through deceit is highly offensive behavior.

90.     Secret monitoring of private app browsing is highly offensive behavior.

91.     Wiretapping and surreptitious recording of communications is highly offensive behavior.

92.     Apple lacked a legitimate business interest in tracking consumers, without their consent, who were using an app, while "Allow Apps to Request to Track" and/or "Share [Device] Analytics" were turned off.

93.     Plaintiff and Class Members have been damaged by Apple's invasion of their privacy and are entitled to just compensation and injunctive relief.

94.     Plaintiff and the members of the class have suffered an injury in fact resulting in the loss of money and/or property as a proximate result of the violations of law and wrongful conduct of Defendant alleged herein, and they lack an adequate remedy at law to address the unfair conduct at issue here. Legal remedies available to Plaintiff and class members are inadequate because they are not equally prompt and certain and in other ways efficient as equitable relief. Damages are not equally certain as restitution because the standard that governs restitution is different than the standard that governs damages. Hence, the Court may award restitution even if it determines that Plaintiff fails to sufficiently adduce evidence to support an award of damages. Damages and restitution are not the same amount. Unlike damages, restitution is not limited to the amount of money a defendant wrongfully acquired plus the legal rate of interest. Equitable relief, including restitution, entitles the plaintiff to recover all profits from the wrongdoing, even

where the original funds taken have grown far greater than the legal rate of interest would recognize. Legal claims for damages are not equally certain as restitution because claims for restitution entail few elements. Significant differences in proof and certainty establish that any potential legal claim cannot serve as an adequate remedy at law here.

## COUNT II

### Violation of the California Invasion of Privacy Act ("CIPA")

### California Penal Code § 632

### (On Behalf of Plaintiff, the Nationwide Class, and the California Class)

95.     Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

96.     Plaintiff brings this claim individually and on behalf of members of the Nationwide Class and California Class against Defendant.

97.     Apple maintains its principal place of business in California. Apple designed and effectuated its scheme to track and record user communications while they were browsing apps from their device while "Allow Apps to Request to Track" and/or "Share [Device] Analytics" were turned off in California, and has adopted California substantive law to govern its relationship with its users.

98.     The California Invasion of Privacy Act is codified at Cal. Penal Code §§ 630 to 638. The Act begins with its statement of purpose:

> The Legislature hereby declares that advances in science and technology have led to the development of new devices and techniques for the purpose of eavesdropping upon private communications and that the invasion of privacy resulting from the continual and increasing use of such devices and techniques has created a serious threat to the free exercise of personal liberties and cannot be tolerated in a free and civilized society."
> Cal. Penal Code § 630.

99.     Cal. Penal Code § 632(a) provides, in pertinent part:

> A person who, intentionally and without the consent of all parties to a confidential communication, uses an electronic amplifying or recording device to eavesdrop upon or record the confidential communication, whether the communication is

19

carried on among the parties in the presence of one another or by means of a telegraph, telephone, or other device, except a radio, shall be punished by a fine not exceeding [$2,500].

100.    Defendant must show it had lawful consent of all parties to a communication.

101.    At all relevant times, Apple's tracking and recording of Plaintiff's communications while using an app with "Allow Apps to Request to Track" and/or "Share [Device] Analytics" turned off was without authorization and consent from the Plaintiff and class.

102.    Apple's mobile applications constitute an "amplifying or recording device" under the CIPA.

103.    Plaintiff and the class have suffered losses by reason of these violations, including violation of rights to privacy and loss of value in personally identifiable information.

104.    Pursuant to California Penal Code § 637.2, Plaintiff and the class has been injured by the violations of California Penal Code § 632, and seek damages for the greater of $5,000 or three times the amount of actual damages, as well as injunctive relief.

## COUNT III

### Violations of the California Unfair Competition Law

### Cal. Bus. & Prof. Code §§ 17200, et seq.

### (On Behalf of Plaintiff, the Nationwide Class, and the California Class)

105.    Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

106.    Defendant Apple is a "person" as that term is defined by, inter alia, Cal. Bus. & Prof. Code § 17201.

107.    Defendant violated the California Unfair Competition Law ("UCL"), §§ 17200, et seq., by engaging in unlawful, unfair, and deceptive business acts and practices in relation to its unlawfully collecting and using data from its iPhone and iPad users, even if they indicate they do not want to be tracked on their mobile devices.

108.    Defendant's unlawful, unfair, and deceptive acts and practices include:

a.  Illegally recording users' confidential activity on its consumer mobile apps and devices;

b.  Unlawfully collecting, storing, sharing, or otherwise using data from its iPad and iPhone users while representing to users that the data collection software was inactivated on their devices;

c.  Not honoring the requests of its users to refrain from tracking users' data while using Apple devices;

d.  Continuing to lead users to believe that Apple is not receiving the data or tracking app usage, while Apple continues to do so without users' knowledge or consent;

e.  Defendant's illegal collection of user data also led to substantial injuries, as described above, that are not outweighed by any countervailing benefits to consumers or competition as contemplated under the UCL. Because Plaintiff and the Class Members did not and could not know of Apple's continued tracking of their data analytics and impermissible use of their personal data, they could not have reasonably avoided the harms caused by Defendant's practices.

f.  Defendant misrepresented that it would protect the privacy and data analytics of Plaintiff and Class Members who elected not to share that information with Apple yet failed to do so. Defendant further omitted, suppressed, and/or concealed the material fact that it would continue to track users' communications and data usage even after those users requested that Apple not track or record Plaintiff's communications or access their computing devices and apps.

g.  Defendant engaged in unlawful business practices by violating Cal. Penal Code § 632.

109.  Defendant's misrepresentations and omissions to Plaintiff and the Class Members were material because they were likely to deceive reasonable individuals about

21

Defendant's adherence to its own privacy policies and procedures for turning off the "Allow Apps to Request to Track" and/or "Share Analytics" features.

110.    Defendant intended to mislead Plaintiff and Class Members and induce them to rely on its misrepresentations and omissions.

111.    If Defendant had disclosed to Plaintiff and members of the class that it would continue to receive their data regardless of the election to turn this tracking feature off, Defendant would have been unable to continue in business with such blatant disregard for users' privacy and data security. However, Defendant instead received, maintained, and compiled Plaintiff's and Class Members' personal data without advising Class Members that Apple would continue to invade their privacy and track data usage without their knowledge. Accordingly, Plaintiff and Class Members acted reasonably in relying on Defendant's misrepresentations about de-activating the data tracking features on their Apple devices and omissions that Apple would continue to receive this data despite users' requests to the contrary.

112.    As a direct and proximate result of Defendant's violations of the UCL, Plaintiff and the class sustained actual losses and damages as described herein.

113.    Plaintiff and the class seek restitution or disgorgement, injunctive relief, and further relief as the Court may deem just and proper.

114.    Plaintiff brings this cause of action on behalf of all Class Members pursuant to UCL §17203, which authorizes extraterritorial application of the UCL. In the alternative, Plaintiff brings this cause of action on behalf of the California Class.

<u>**COUNT IV**</u>

**Unjust Enrichment (Quasi-Contract Claim for Restitution and Disgorgement) or, Alternatively, Breach of Contract**

**(On Behalf of Plaintiff, the Nationwide Class, and the California Class)**

115.    Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

116.   Defendant benefits from the use of Plaintiff's and Class Members' user data and private information and unjustly retained those benefits at their expense. Plaintiff and Class Members conferred a benefit upon Defendant in the form of user data and private information that Defendant tracked and collected from Plaintiff and Class Members and, among other things, also disclosed to third parties, all without their consent, authorization, and proper compensation. Defendant knowingly collected and used this information for pecuniary gain, providing Defendant and third parties with economic, intangible, and other benefits, including substantial monetary compensation.

117.   Apple was enriched when it utilized Plaintiff's and Class Members' personal information stored without consent for its own financial advantage to optimize its advertising platform, including by allowing its paying advertisers to target Plaintiff and Class Members for advertisements.

118.   Apple was enriched when it utilized Plaintiff's and Class Members' personal information stored without consent for its own financial advantage to build better services, to maintain and improve Apple's services, to develop new services, and to measure performance, all of which enable Apple to, and which Apple does use, to create operational efficiencies and be competitive in a wide array of industries.

119.   Plaintiff and Class Members received nothing in exchange for their loss of privacy, while Defendant reaped financial benefits including, but not limited to, advertising profits.

120.   Defendant's conduct, of which Apple was fully aware, damaged Plaintiff and Class Members, all without providing any commensurate compensation to them.

121.   The benefits that Defendant derived from Plaintiff and Class Members were not offered by Plaintiff and Class Members gratuitously and rightly belong to Plaintiff and Class Members. It would be inequitable under unjust enrichment principles in California and every other state for Defendant to be permitted to retain any of the profit or other benefits wrongly derived from the unfair and unconscionable methods, acts, trade practices and deceptive conduct alleged in this Complaint.

122.   Defendant should be compelled to disgorge into a common fund for the benefit of Plaintiff and Class Members all unlawful or inequitable proceeds that Defendant received, and such other relief as the Court may deem just and proper.

123.   Alternatively, to the extent Apple successfully asserts that the Terms of Service form a binding contract that sufficiently defines the parties' rights regarding Apple's use of Plaintiff's and Class Members' location information, thereby rendering a claim for unjust enrichment unavailable (which Plaintiff denies in the first instance), then Plaintiff alleges that Apple's conduct constitutes a breach of any such binding contract. By way of example, Apple's Terms of Service incorporate Apple's Privacy Policies, and in those Privacy Policies, Apple promises that "Apple requires app developers to ask for permission before they track your activity." Apple breaches this contract by allowing Apple apps to track user activity despite not asking for permission to do so.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and the proposed class, prays for relief and judgment against Defendant as follows:

    a.   certifying the Class pursuant to Rule 23 of the Federal Rules of Civil Procedure, appointing Plaintiff as representative of the Class, and designating Plaintiff's counsel as Class Counsel;

    b.   declaring that Defendant's conduct violates the laws referenced herein;

    c.   finding in favor of Plaintiff and the class on all counts asserted herein;

    d.   awarding Plaintiff and the class compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

    e.   awarding pre-judgment interest on all amounts awarded;

    f.   granting Plaintiff and the class declaratory and equitable relief, including restitution and disgorgement;

    g.   enjoining Defendant from continuing to engage in the wrongful acts and practices alleged herein;

h. awarding Plaintiff and the class the costs of prosecuting this action, including expert witness fees;

i. awarding Plaintiff and the class reasonable attorney fees and costs as allowable by law;

j. granting any other relief as this Court may deem just and proper.

25

1

## **JURY TRIAL DEMANDED**

2

Plaintiff hereby demands a trial by jury on all issues so triable.

3

4

Dated: February 16, 2023        Respectfully submitted,

5

/s/  *David S. Casey, Jr.*

6                                    CASEY GERRY SCHENK FRANCAVILLA

7                                        BLATT & PENFIELD, LLP
                                     David S. Casey, Jr.

8                                    Gayle M. Blatt

9                                    P. Camille Guerra
                                     110 Laurel Street

10                                   San Diego, CA 92101

11                                   Telephone: (619) 238-1811
                                     Fax: (619) 544-9232

12                                   dcasey@cglaw.com
                                     gmb@cglaw.com

13                                   camille@cglaw.com

14

15                                   *Attorneys for Plaintiff and the Putative Nationwide*
                                     *Class and California Class*

16

17

18

19

20

21

22

23

24

25

26

27

28